IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TERRENCE WHITAKER,

                Plaintiff,                OPINION AND ORDER

  v.

                                      20-cv-1042-wmc

SGT. MUTIVA, C.O. LEINEN,
SGT LAXTON,
and TANIA MCCOLLOUGH,

                Defendants.

---

TERRENCE WHITAKER,

                Plaintiff,                OPINION AND ORDER

  v.

                                      21-cv-412-wmc

SGT LAXTON
and TANIA MCCOLLOUGH,

                Defendants.

---

In these consolidated cases, plaintiff Terrence Whitaker is representing himself and alleges that while he was incarcerated at the Wisconsin Secure Program Facility ("WSPF"), defendants twice delayed providing him self-catheterization supplies, causing pain and an inability to urinate in violation of the Eighth Amendment. Defendants have now moved for summary judgement, arguing that Whitaker's claims lack merit. (Dkt. #31.)[1] For the following reasons, the court will grant defendants' motion and dismiss this case.[2]

---

[1] This order cites to the docket entries in Whitaker's lead case, captioned as Case No. 20-cv-1042-wmc above, except as noted.

[2] Because defendants are entitled to summary judgment on the merits of Whitaker's claims, the court need not reach defendants' alternative assertion of qualified immunity.

UNDISPUTED FACTS[3]

Although Whitaker is currently incarcerated at Waupun Correctional Institution, the alleged events underlying this lawsuit took place while he was incarcerated at WSPF in April 2020. As noted, all defendants worked at that facility at that time, including then-Sergeants Matthew Mutiva and Timothy Laxton, as well as Correctional Officers Jeremiah Leinen and Tonia McCollough.

A. Incident on April 17, 2020

Whitaker uses a catheter to urinate, but he does not require a resupply of catheters and related items every day, and there is no medical evidence that he is unable to urinate without a catheter. On April 17, 2020, Whitaker was housed in the Alpha Unit in the restrictive housing section at WSPF. There were 81 inmates on the unit at that time and 4 officers, including Sergeant Mutiva and Officer Leinen. One of Leinen's duties was to complete the medication pass, which happens four times a day. Before each medication pass, the sergeant makes an announcement to all inmates to inform them that medication pass is about to begin. Among other things, this announcement gives inmates who do not receive regularly-scheduled medications a chance to request over-the-counter medications via the intercom before the pass begins. Of course, inmates who receive regularly-scheduled medications and supplies do not need to make any special request ahead of time, because an officer stops at their cell door during the pass under a pre-set schedule. However, all

---

[3] Unless otherwise indicated, the following facts are material and undisputed. Consistent with its practice, the court has drawn these facts from the parties' proposed findings and the evidence of record viewed in a light most favorable to plaintiff. *See Miller v. Gonzalez*, 761 F.3d 822, 877 (7th Cir. 2014) ("We must . . . construe the record in the light most favorable to the nonmovant and avoid the temptation to decide which party's version of the facts is more likely true.").

inmates must be ready and have a light on inside their cells for staff safety during a medication pass, and it is their responsibility to get up and come to the front of their cells.

Because inmates' movements and privileges are limited on Alpha Unit, even medication and medical supplies that are normally designated "keep on person" or "as needed," including catheters and related lubricant, must stay with the officers on the medication cart per WSPF policy. Relevant here, inmates may keep one catheter and lubricant set for use as needed, but additional sets must be requested at the next medication pass. Whitaker attests that staff have been known to make exceptions to the receipt of medical supplies during pass times, and in particular will distribute medications and supplies when inmates are away on a visit, conducting legal or court calls, going to the law library, or using the bathroom during a pass.

In addition to his as-needed, keep-on-person catheter supplies, Whitaker received regularly scheduled medication. On April 17, at 2:50 p.m., Sergeant Mutiva announced that the medication pass was about to begin, and Officer Leinen began the pass at 3:12 p.m. Because he had regularly-scheduled medication to take, Whitaker's cell was on Leinen's list of cell stops. However, Whitaker admits he was sleeping when Leinen arrived at his cell door. Moreover, Leinen attests that he knocked on Whitaker's cell door, and observed Whitaker's chest moving, but Whitaker did not respond, and he went on to the next inmate. Leinen further attests that he did not continue trying to rouse Whitaker because he needed to keep to the pass schedule, and he did not want to provoke or upset Whitaker by waking him up. In response, Whitaker attests that: he does not recall anyone knocking on his cell door; in his experience, staff always wakes inmates up for medication

3

pass as a welfare check; and Officer Leinen was required to make sure Whitaker was responsive.

Later, at around 3:53 p.m., Officer Leinen and others began distributing evening meals in Alpha Unit. When Leinen picked up Whitaker's meal tray, Whitaker made a point of telling Leinen that he needed his catheter to use the bathroom, but Leinen just moved along collecting trays. Having not received his catheter supplies, Whitaker then contacted Sergeant Mutiva between 4:00 and 5:00 p.m., asking for his supplies and noting that Leinen had not stopped at his cell during the afternoon medication pass. Sergeant Mutiva then spoke to Officer Leinen, who explained that Whitaker had been asleep during that pass. Because he credited Leinen's explanation, knew that Whitaker did not request catheter supplies daily, was aware of the pass schedule, and knew that an announcement had been made before the pass began, Mutiva determined that Whitaker had effectively refused the 3:12 p.m. medication pass by sleeping through it. Sergeant Mutiva further knew that Whitaker would have another opportunity to request his catheter and lubricant at the next medication pass scheduled for 7:10 p.m. that same evening.

While Whitaker attests that he pressed his intercom button a second time regarding his catheter at some point, Sergeant Mutiva neither recalls nor disputes that exchange, but instead attests that there would have been no further action to take after speaking with Leinen and concluding that Whitaker had slept through the pass. More importantly, there is no dispute that Whitaker received his catheter supplies at the evening medication pass, although he attests to being in pain and experiencing cramps in the meantime.

4

B.  **Incident on April 23-24, 2020.**

On April 23, 2020, Whitaker was transferred from the Alpha Unit to Delta Unit, a general population unit that allows inmates more movement. When an inmate is transferred to another unit, he can pack and take items from his cell if allowed on the new unit. However, medications and medical supplies are generally transferred to the new unit medication cart by unit staff assisting with the inmate transfer or by support staff. If necessary, the receiving unit may also call the sending unit to direct staff to transfer medication and medical supplies from one medical cart to the other.

Whitaker arrived at Delta Unit at around 8:55 a.m., when Sergeant Laxton and Officer McCollough were working on that unit. When Whitaker asked Officer McCollough during the 10:15 a.m. medication pass for his catheter lubricant, it had apparently not yet been transferred; McCollough allegedly did not try to expedite transfer or otherwise obtain any in the meantime. Although Officer McCollough does not remember this exchange, she attests her normal practice would have been to tell her sergeant had Whitaker requested lubricant that was not on the medication cart, and her sergeant would then have been responsible for deciding how to proceed with the request.

Regardless, at some point, Whitaker followed up himself, telling Sergeant Laxton via intercom that he needed his lubricant to urinate and that it had been left on Alpha Unit. Sergeant Laxton then called Alpha Unit at least twice asking for the lubricant and was told that staff would look for and send it. Whitaker further attests that he followed up with Laxton about his lubricant via intercom the next day, April 24. While Sergeant Laxton does not recall this conversation, Laxton attests that by then he had already requested the lubricant from Alpha Unit. Laxton also explains that Delta Unit staff have

5

no control over what happens on Alpha Unit; and it takes time to locate supplies or to request them from another unit because staff in both units have other duties including meal and medication distribution, showers, and escorts of inmates for recreation or medical appointments.[4]  Whatever the reason, Whitaker alleges that he was without lubricant for "over a day," and that he experienced "constant uncomfortable pain."  (Dkt. #1 at ¶ 15 in the '412 case.)

On April 23, 2020, Whitaker submitted a health services request ("HSR") stating that he was "having problems with my catheter and private area," but when he was seen in the health services unit the following day, he did not complain of any delay in receiving his catheter supplies or of any resulting pain or injury, and he was simply directed to follow up with his provider for recommendations.  (Dkt. #34-6 at 1, 4.)  Two days later, on April 26, Whitaker was seen in the HSU for unrelated abdominal complaints and requested and received lubricant.  (*Id.* at 2.)

OPINION

Defendants argue that they are entitled to summary judgment on plaintiff's Eighth Amendment claims.  A party is entitled to summary judgment if the movant shows (1) no genuine dispute exists as to any material fact[5] and (2) judgment is appropriate as a matter of law.  Federal Rule of Civil Procedure 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  If the moving party makes such a showing, then to survive summary

---

[4] Neither side explains whether or why Whitaker did not just ask for a resupply of lubricant at the next medication pass, but for purposes of summary judgment, the court will assume that request would have been denied since a transfer of supplies from Alpha Unit had already been requested.

[5] "Material facts" are those that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

judgment, the non-moving party must provide contrary evidence "on which the jury could reasonably find for the nonmoving party." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406-407 (7th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252).

Plaintiff alleges that defendants were deliberately indifferent to his serious medical need for catheter supplies. A prison official may violate the Eighth Amendment right if "deliberately indifferent" to an objectively "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). A serious medical condition is one that "has been diagnosed by a physician . . . or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (quoting *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008)). Defendants do not dispute that plaintiff experienced pain, but do dispute plaintiff's assertion that he cannot urinate without a catheter and lubricant, noting that plaintiff has produced no evidence supporting what they characterize as a "medical finding." (Dkt. #51 at ¶ 2.) However, why a jury could not credit plaintiff's testimony that he had been unable to urinate without a catheter is unclear to the court.

Alternatively, defendants argue that plaintiff has not produced evidence that they acted with deliberate indifference to his request for supplies. That is a high standard, requiring a showing that the defendants were subjectively aware that the prisoner faced a substantial risk of serious harm but disregarded the risk by consciously failing to take reasonable measures to address it. *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997). It is "not enough that there was a danger of which a prison official objectively should have been aware." *Estate of Novack ex rel. Turbin v. Cnty. of Wood*, 226 F.3d 525, 529 (7th Cir. 2000). Instead, "the official must both be aware of facts from which the inference could

7

be drawn that a substantial risk of harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference therefore constitutes more than negligent acts, or even grossly negligent acts, but may require something less than purposeful acts. *Id.* at 836.

Defendants argue that even though delivery of plaintiff's catheter supplies was twice delayed, they were neither unaware of, nor should they have been aware of -- and thus, were neither deliberately indifferent nor recklessly disregarded -- a serious medical need. Plaintiff has offered no evidence supporting a claim against defendants arising out of the April 17 incident in Alpha Unit; although in fairness to plaintiff, the record is mixed as to defendants' responsiveness to plaintiff's April 23 and 24 requests for supplies.

On April 17, Officer Leinen tried to distribute plaintiff's supplies to him during the medication pass, but plaintiff was asleep. Leinen would have had no indication at that point that plaintiff even needed a catheter. While plaintiff purports to dispute that Leinen stopped and knocked on his cell door and checked that he was breathing before moving on, plaintiff concedes he was asleep, and thus, he has no personal knowledge of whether Leinen attempted to rouse him. And while plaintiff contends that Leinen should have done more to wake him up, plaintiff neither disputes that he knew the medication pass schedule nor that Leinen had to stick to it. Plaintiff further alleges, however, that Leinen did nothing when plaintiff again asked for catheter supplies as Leinen came by to collect his meal tray, even though staff supposedly can distribute medical supplies outside scheduled medication pass times.[6]

---

[6] Plaintiff does not specifically assert that staff make exceptions for sleeping or during mealtimes, in addition to "visits; legal calls or court; law library and when the inmate is using the bathroom."

Sergeants Mutiva and Officer Leinen addressed plaintiff's requests on the 17th. Plaintiff does not dispute that Leinen's practice would have been to inform his sergeant of plaintiff's mealtime medical supply request, and that Sergeant Mutiva ultimately spoke with Leinen about the issue. While Mutiva decided that plaintiff had to wait for the evening medication pass to receive his supplies, he did not ignore plaintiff's concern or make an arbitrary decision. Rather, he investigated by speaking with Officer Leinen, learned that plaintiff had slept through the afternoon pass, and considered how often plaintiff requested catheter supplies and that plaintiff knew the pass schedule.

Nor does plaintiff argue that his lubricant was on the medication cart when he asked Officer McCoullough for it just two hours after his transfer to Delta Unit on April 23. Although the record is murky as to what Officer McCoullough did in response to plaintiff's request for lubricant, as neither she nor Sergeant Laxton recall her informing him that a serious problem existed, plaintiff does not dispute that McCoullough's practice would have been to inform her sergeant if a requested medication was not on the cart. And there is no dispute that Laxton called Alpha Unit at least twice to ask about plaintiff's lubricant after plaintiff told him he needed it.

For their part, at worst, Officer McCollough simply saw no need for follow up since there was no reason on the 23rd to think his supplies would not be transferred and, as noted, Sergeant Laxton reached out at least twice to plaintiff's old unit to ask for his lubricant and was told that it would be sent over. Even if, as plaintiff attests, nothing more

---

(Dkt. #47 at ¶ 3.) Nor does plaintiff dispute that prison staff are generally very busy balancing competing tasks and must try to adhere to the unit schedule, or that Officer Leinen would need to finish meal pick up before addressing any inmate requests. (Dkt. #49 at ¶¶ 9-11, 37.)

9

was done by either unit, there would appear a lack of evidence from which a reasonable jury could find deliberate indifference.

All that said, defendants are also independently entitled to summary judgment because a jury could not reasonably find or infer that *any* defendant knew or should have known plaintiff was experiencing a serious medical need or severe pain that was being exacerbated by delay. Certainly, a significant delay in effective medical treatment supports a medical care claim, especially where the result is prolonged and unnecessary pain as plaintiff alleges. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). As noted, there is no evidence that plaintiff requested catheter supplies or used them daily. However, even if plaintiff must always urinate using a catheter and lubricant, there is no evidence that defendants knew that, nor that plaintiff complained to any of the named defendants about serious pain or cramping because of the two delays at issue. *Compare Dvorak v. Marathon Cnty.*, No. 01-C-0450-C, 2002 WL 31115191, at *1 (W.D. Wis. July 29, 2002) (placing someone "into a restraining cell for [12-15 hours] without a catheter, knowing that the person could not urinate without one," violates the Eighth Amendment). As noted above, it is "not enough that there was a danger of which a prison official objectively should have been aware," the official must also know of enough facts to draw the inference that the danger exists. *Estate of Novack*, 226 F.3d at 529; *Farmer*, 511 U.S. at 837.

In fairness, plaintiff asserts that he asked Officer Leinen for a catheter during the evening mealtime to use the bathroom, told Sergeant Mutiva via intercom "about the need for his catheter" (dkt. #47 at ¶ 26), and asked both Officer McCoullough and Sergeant Laxton for lubricant. Moreover, Leinen and Mutiva, as officers who worked on Alpha Unit, would have been aware that plaintiff used a catheter. However, plaintiff does not allege or

attest that he told any defendant that he used or even needed to use a catheter every day or that he was in serious pain and cramping without one, nor does he claim or attest that any defendant saw him in pain or cramping, or otherwise knew that he was. Finally, plaintiff's April 23 HSR did not reference any delay in receiving his catheter supplies, much less report any resulting pain or injury. Similarly, the corresponding progress notes from plaintiff's April 24 evaluation in the health services unit do not record any complaint of delayed receipt of supplies or resulting pain or injury either, nor does plaintiff make any such complaint during a nursing call on April 26 for abdominal issues. At most, plaintiff asserts that defendants should have done more to avoid or shorten the delays at issue, but to the extent any defendant may have been negligent or even grossly negligent in responding to or following up on plaintiff's catheter supply requests, that is not enough to establish deliberate indifference. *Farmer*, 511 U.S. at 836. Accordingly, the court must grant defendants' motion.

ORDER

IT IS ORDERED that:

1) Defendants' motion for summary judgment (dkt. #31 in the '1042 case and dkt. #30 in the '412 case) is GRANTED.

2) Defendants' motion to stay case deadlines (dkt. #54 in the '1042 case and dkt. #53 in the '412 case) is DENIED as moot.

3) The clerk of court is directed to enter judgment in favor of defendants and to close this case.

Entered this 19th day of December, 2023.

BY THE COURT:
/s/
WILLIAM M. CONLEY
District Judge

11